the decision of the court. It is no answer to this to say that the plaintiff might have moved for a new trial before the trial judge, or have entered an interlocutory judgment upon Justice Smith's decision, and moved for a new trial in this court. He might have pursued either of these remedies; but he could, we think, also enter a final judgment, expressing the determination of the court, and appeal, as he did, from the part thereof of which he felt aggrieved. We are not referred to any provision of the Code of Civil Procedure which forbids such an appeal.

The judgment must be modified by striking out the words, "except the defendant Henrietta Benjamin," from that part thereof adjudging the effect of the sale of the property upon the defendants, and in other respects, so far as appealed from, must be reversed, with costs of appeal. All concur.

---

(10 App. Div. 535.)

### BRUSH v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

1. NEGLIGENCE—FIRES—PLEADING AND PROOF.

Under a complaint alleging that defendant "so negligently and carelessly managed a fire which it intentionally kindled and maintained in a certain locomotive" that the fire came into and upon plaintiff's premises, negligence consisting in using a defective spark arrester on the engine may be proved.

2. DEFECTIVE SPARK ARRESTER—EVIDENCE.

Where defendant is charged with using a defective spark arrester, and an engineer testifying for plaintiff has described the screens in ordinary use to prevent emission of sparks, and has identified such a screen, and it is put in evidence, he may state whether, if an engine is "properly constructed," certain cinders in evidence could be emitted; the context showing that by "properly constructed" was meant an engine having such a screen as had just been identified as being ordinarily employed, and it being contended by defendant that heated cinders are often forced through meshes that they could not pass through when cold, and witness' statement that the cinders could not be emitted being simply a statement of his own observation.

3. INSTRUCTIONS.

An instruction, "You have the opinion of the witnesses that no engine provided with the best means in common use would throw out such lumps of fire, and you are to say what gives way,—whether this railroad engine was in good order with a netting the best in known and in common use, or whether there was something which permitted the escape of sparks which could not escape from such an engine in good order,"—does not assert that sparks would not escape from an engine in good order, but simply refers to testimony to that effect, and leaves the question to the jury.

4. SAME—SUFFICIENCY OF EVIDENCE.

Where the only evidence as to the construction of defendant's engine, from which it was claimed a fire proceeded, came from defendant's employés, a charge that the evidence showed that defendant employed appliances as good as any known to prevent fire is properly denied, it being for the jury to say whether the facts testified to were proved.

5. RAILROAD FIRES—PLEADING AND PROOF.

Though a complaint merely alleges that defendant so negligently and carelessly managed a fire which it intentionally kindled and maintained in a locomotive that it came into and upon plaintiff's premises, and makes no reference to an accumulation of rubbish on the right of way as an agency in spreading the fire, recovery may be had for a fire communicated from the engine to the rubbish, and so spread to plaintiff's premises.

**6. EXCEPTION.**

Error in requiring the jury to allow interest in an action for tort cannot be availed of under an exception so worded as to indicate that the instruction merely permitted their awarded interest, in which case the instruction would have been correct.

Appeal from circuit court, Queens county.

Action by Juliet Brush against the Long Island Railroad Company. From a judgment for plaintiff, and an order denying motion for a new trial made on the judge's minutes, defendant appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William C. Beecher, for appellant.

Henry A. Monfort, for respondent.

WILLARD BARTLETT, J. On the 3d day of April, and the 16th day of May, 1893, portions of the plaintiff's woodland near the Cold Spring station of the Long Island Railroad were burned over by a fire, which the proof tended to show proceeded from live sparks or cinders which had escaped from one of the defendant's locomotives. The plaintiff recovered a verdict at the circuit, on the ground that the defendant negligently caused the fire, either by failing to use the best known means in common use to prevent the escape of sparks, or by suffering inflammable material to be so near the track that it was ignited by burning matter necessarily emitted from an engine with the best appliances in perfect order. From the judgment entered upon this verdict, and an order denying a motion for a new trial, the defendant has appealed.

The appellant complains, in the first place, that the court permitted the plaintiff's counsel to try the case upon a theory totally different from that presented by the complaint. The allegation in the complaint was that the defendant "so negligently and carelessly managed a fire which it intentionally kindled and maintained in a certain locomotive that the said fire came into and upon the said premises of the plaintiff," etc. This, it is said, is the allegation of a mismanaged fire, and not of a defective spark arrester, while the case was tried on the theory that the defendant's negligence consisted in using a defective spark arrester upon its locomotive. But we do not think the language of the complaint is so limited in its scope and import. A fire may be mismanaged in many ways, and one of those ways might be by the failure to provide proper means to prevent the escape of the burning material. There is no merit in the objection on the ground of variance.

The second objection argued by the learned counsel for the appellant relates to the admission of evidence as to the value of the plaintiff's woodland by witnesses who, as he insists, were not qualified as experts. I agree with him that some of this evidence should not have been received; but there was proof of value in the case, from witnesses who were competent, and I hardly think that the award of the jury was influenced by the testimony erroneously admitted on this branch of the case. The errors in this respect may therefore be disregarded.

A more serious objection is that presented by the appellant's third point, in reference to the testimony of a locomotive engineer named Rundlett, who gave evidence in regard to the screens in ordinary use to prevent the emission of dangerous sparks or coals from engines. He identified such a screen, and after it was put in evidence he was asked this question: "Will you please look at these cinders, which I now show you, which have been offered in evidence, and tell me whether, if an engine is properly constructed, such coals or cinders can be emitted." The defendant's objection, on the ground that the question was immaterial, incompetent, and irrelevant, was overruled, and the witness answered: "No, sir; they would not go through." If this question stood by itself, and the witness had given no testimony as to the form of the screen in ordinary use, the ruling of the trial court could hardly be sustained. The question as to what was a properly constructed engine. so far as the spark arrester was concerned, was to be determined by the jury upon proof showing what were the best appliances commonly adopted to prevent the escape of sparks from locomotives; and the opinion of the witness as to what was or was not proper in this respect was inadmissible. But the context in the record shows that what counsel meant by an engine "properly constructed," and what the witness must have understood, was an engine having such a screen as he had just identified as being ordinarily employed; and his answer was simply a statement that the cinders exhibited to him could not pass through such a spark arrester as that. It seems to me that, so intended and understood, the testimony was properly received. The witness was competent to state the results of his experience in this respect, especially as it was contended in behalf of the defendant that heated cinders in a warm and spongy condition are often forced through the meshes of a spark arrester which they could not pass through when cold; and the statement that the particular cinders in evidence could not be emitted was in substance simply a statement of what had been his own observation in the matter.

As to the fourth point,—that plaintiff failed to show that the fire was caused by any negligence of the defendant,—it is enough to say that there was sufficient evidence not only to justify but require the trial court to submit the question of negligence to the jury.

The fifth point on the appellant's brief is devoted to the consideration of alleged errors in the charge. The first exception argued is one to that part of the charge in which, "in substance and effect, the court stated that sparks could not escape from an engine in good order, and that, if any such sparks escaped, they would indicate that the locomotive was out of order, and that the defendant is liable." Referring to the charge itself, I am unable to find any statement like that mentioned in this language in the exception. What Mr. Justice Barnard did say to the jury was this:

"You have the opinion of the witnesses that no engine provided with the best means in common use would throw out such lumps of fire; and you are to say what gives way,—whether this railroad engine was in good order with a netting the best in known and in common use, or whether there was something which permitted the escape of sparks which could not escape from such an engine if in good order."

This was not, as counsel seems to have supposed when he took his exception, an assertion by the court that sparks would not escape from an engine in good order, but a reference to the testimony to that effect which still left the whole question to the jury, and was therefore unobjectionable.

The second exception to which our attention is called relates to the refusal of the court to charge that the evidence showed that the defendant employed appliances which were as good as any known to prevent the fire. In response to counsel's request for this instruction, the learned judge said, "I leave it to the jury." Here there was no error. The only evidence as to the construction of the locomotives Nos. 132 and 135, from one or both of which the fire must have proceeded, if the defendant is responsible at all, came from persons in the employment of the railroad company; and the defendant was not entitled to have the jury instructed that the facts to which they testified were established by the proof. It was for the jury to say whether such facts were proved or not.

The third exception, to the instruction that the jury were not bound by the exact date—the 16th of May—contained in the complaint, is not well taken. Indeed, the complaint did not attempt to fix the exact date, but alleged that the fire occurred "on or about the 16th day of May."

The court charged the jury that the defendant was liable if it permitted the fire that escaped from the engine to communicate to stuff that was allowed to collect so near the track as to make it a source of danger. The fourth exception discussed in the brief refers to this instruction, and the contention is that no such question could properly be submitted to the jury under the pleadings, and that there was no proof that the rubbish was in fact on the defendant's land. The evidence as to the starting of fires in the accumulated leaves and cut grass appears to have come in without objection, and was admissible, I think, even though there was no specific reference in the complaint to this precise agency in spreading the fire. As was said in O'Neill v. Railway Co., 115 N. Y. 579, 22 N. E. 217, the fire on the track was the fire of the railroad company as much as if confined in the engine, and it owed a like duty to see that it did no harm. It can hardly be doubted that the accumulation to which the witnesses referred was on the land of the defendant. One witness speaks of it as being "on the railroad ground, where they pretended to own all," and in the neighborhood of five to ten feet from the rail; and another says the fire of April 3, 1895, started in a collection of briars and dead grass and dry leaves probably about six feet from the north of the rail.

The final point argued by the appellant is that the court erred in directing the jury that they must allow interest on their verdict. Although the word "must" was not used by the learned judge, his language was substantially an instruction to give the plaintiff interest on the sum which the jury fixed as the damages to her woodland. The learned counsel for the defendant, however, evidently did not so understand it at the time of the trial, for his exception was to the instruction "that the jury may cast interest upon the

amount found on the first cause of action to date, and that they have the right to add interest to any amount which they may find." Such a direction would have been wholly unobjectionable, for the rule in actions of tort to recover unliquidated damages is that the jury may award interest in their discretion, but are not bound to do so. Duryee v. Mayor, etc., 96 N. Y. 477. And see language of Bradley, J., on this subject, in Mansfield v. Railroad Co., 114 N. Y. 331, 21 N. E. 735, 1037. The exception was so worded as to convey to the mind of the trial judge the impression that he had correctly instructed the jury in regard to this matter of interest, while, if it had called attention to the fact that he had not left to the discretion of the jury the question of including interest in the plaintiff's damages, the court would doubtless have corrected the error. In the form in which it was taken, the exception is not available to the defendant.

The judgment and order should be affirmed, with costs. All concur.