ANN ARBOR R. CO. v. FOX et al.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

No. 636.

RAILROADS—LIABILITY FOR FIRES—BURDEN OF PROOF AS TO NEGLIGENCE.
Under the Michigan statute (How. Ann. St. § 3481) which provides that
any railroad company shall be liable for all loss or damage by fire orig-
inating from such railroad, "provided that such company shall not be
held so liable if it prove * * * that such fire originated from fire by
engines whose machinery, smoke-stack, or fire-boxes were in good order
and properly managed," proof of a fire having started from an engine
of a railroad company raises a presumption of negligence, and the
burden rests upon the company to bring itself within the exception by
showing that its engine was in good order and properly managed; and
this is true although the property destroyed was on its right of way,
and within less than 50 feet of its track, when it was there with the
knowledge and acquiescence of the company, and for the mutual conven-
ience of the owner and the company.

In Error to the Circuit Court of the United States for the Western
District of Michigan.

The plaintiffs, on the 23d day of October, 1895, owned, in the village of
Thompsonville, in the state of Michigan, a large quantity of lumber, which
lay near the track of the Toledo, Ann Arbor & North Michigan Railway Com-
pany. About 1 o'clock in the afternoon of that day, the lumber was destroyed
by fire. The fire broke out shortly after the passage of a train known as
the "work train." On behalf of the plaintiffs the claim was that the fire orig-
inated from sparks emitted from the engine on this train; that the engine
was defective in construction, in not being provided with proper spark-
arresting devices, and in other respects; that it was improperly managed on
the occasion in question; that combustible matter had been carelessly allowed
to accumulate on and over the right of way of the railway company; that
sparks from the engine fell upon this combustible matter upon the right of
way, which took fire; and that the fire ran through this inflammable material
under one of the piles of lumber, and, without fault on the part of the plain-
tiff, spread over and consumed all of the lumber in the yard. The railway

at the time was being operated by Wellington R. Burt, as receiver, appointed by the circuit court of the United States for the Northern district of Ohio. The receiver was subsequently discharged, the railway property having been sold to the defendant, the Ann Arbor Railway Company, which assumed and agreed to pay all of the receiver's debts and liabilities. This action was brought by leave of the court appointing the receiver, for the purpose of having an adjudication as to the liability of the receiver (and the defendant railroad company) for the loss in question. On behalf of the defendant it was claimed that the receiver was not negligent in respect either of the construction or operation of the engine, or the condition of the right of way; that the plaintiffs were guilty of negligence in respect (1) of the location of their lumber; (2) the condition of the ground about the lumber piles; and (3) the failure to use reasonable efforts to stay the progress of the fire.

The case was tried before a jury, resulting in a verdict for the plaintiffs for $15,500, upon which judgment was entered. The right of way of the defendant at the place where the fire occurred was 100 feet in width. The track was in the center of the right of way. The line of the railroad ran northeasterly, and the lumber yard was on the northerly side of the track. The railroad at this point was a part of what had formerly been the road of the Frankfort & Southeastern Railway Company, which latter company conveyed its railroad to the Toledo, Ann Arbor & North Michigan Railway Company in 1892. The lumber yard in question was owned, and for some years had been operated, by the Thompson Lumber Company. The owners of the Thompson Lumber Company were also largely interested in the Frankfort & Southeastern Railway Company. At the time of the fire, Charles Fox & Co. were the lessees of the Thompson Lumber Company, and were operating the yard. The Thompson Lumber Company had been accustomed to pile lumber on the right of way of the railroad company without its objection. A tramway had been constructed by the Thompson Lumber Company to the north of and lengthwise of the railway track, partly on and partly off the right of way, and piles of lumber were placed on the right of way. This was done originally for convenience in shipping lumber over the railroad, for it was then the custom to load from the piles onto cars standing on the main track of the road. Subsequently a side track was built, extending up into the yard, and thereafter all the shipping was done from the side track. The lumber company, however, continued to pile its lumber in the same place on the railroad right of way; and the successors in title of the lumber company, the defendants in error here, continued the practice, without objection or remonstrance by the railway company. In 1894 the receiver built a fence along the right of way. When the lumber piles were reached, the fence was "jogged" in towards the track, and was constructed along the top of the bank of the excavation in which lay the railway track. The lumber pile in which the fire first broke out was four feet from the fence. The distance from the fence to the edge of the bank was from six to seven feet. The distance from the top of the bank to the railway track in the cut below was from 15 to 20 feet. Plaintiffs' evidence tended to show that the spark from the engine had fallen into some dry grass on the bank on the railway side of the fence, and set fire to it; that the fire ran along the fence, and thence to the lumber pile, but four feet distant. When the fire was first discovered, there was no blaze visible, except what was readily extinguished, but smoke was issuing from under the pile. Ineffectual efforts were made by several men to put it out by throwing water and dirt under the pile. Other efforts were made to throw the lumber from the top of the pile, but this would have required so much time that the efforts were abandoned. Evidence was also introduced to show that it was suggested to Fox, one of the defendants in error, by an employé of the receiver, that the pile be blown up with dynamite, of which a supply was on hand, but that Fox at first refused, and, when he subsequently gave permission, it was then attempted, but without success. At the time of the fire, a strong wind was blowing from the railway track towards the yard. The day was fair, and the season had been dry.

A. L. Smith, for plaintiffs.
Mark Morris and George P. Wanty, for defendant.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge. The statute of Michigan provides that:

"Any railroad company building, owning or operating any railroad in this state, shall be liable for all loss or damage to property by fire originating from such railroad, either from the engines passing over such road, fires set by the company's employés, by order of the officers of said road, or otherwise originating in the constructing or operating of such railroad; provided, that such railroad company shall not be held so liable if it prove to the satisfaction of the court or jury that such fire originated from fire by engines whose machinery, smoke-stack, or fire-boxes were in good order and properly managed, or fires originating in building, repairing or operating such railroad, and that all reasonable precautions had been taken to prevent their origin, and that proper efforts had been made to extinguish the same in case of their extending beyond the limits of said road, when the existence of such fire is communicated to any of the officers of such company."

The court charged the jury that:

"Where it appears that fire has originated in the manner mentioned by the statute, and injury has happened therefrom, the duty devolves upon the defendant of showing that, notwithstanding it has happened, the railroad company—or receiver, in this case—has not been guilty of any negligence which has caused the fire, and has taken proper precautions in the construction and management of his machinery, and in other particulars pointed out by the statute." "Under the statute, upon proof of a fire having started from one of the engines of a railroad company, there is a presumption that it has been caused by some fault, some negligence, on the part of the company, either in the structure or management of the engines, or in the manner in which it has taken care of its right of way; and upon proof of the fact that the fire has been caused by an engine of a railroad company, which has passed over onto the land of private owners, and there caused damage, a prima facie case is made out, and the railroad company cannot escape liability, except by assuming and maintaining the burden of showing that it has exercised due care in the premises."

We think that this was the plain and manifest effect of the statute. The statute first imposes a liability upon the railway company for all loss occasioned by fire originating from the operation of its road, and follows this with an exception or proviso in which the railroad company is given the opportunity to escape such liability by showing that it has exercised due care. This necessarily imposes upon the railroad company, if it wishes to take advantage of the proviso of the statute, the burden of showing the fact upon which the proviso becomes operative, to wit, that it exercised due care with respect to the prevention of the fire, which had originated in its operation of the road. But it is argued that, even if this be conceded to be the correct view of the statute, the statute is not thus to be construed where the property destroyed is upon the right of way of the company. The learned counsel says that:

"Section 3323 of Howell's Annotated Statutes of Michigan permits and contemplates that railway companies shall have 100 feet as a right of way, which they are obliged to keep reasonably clear and free from combustible matter. This width is allowed, not merely for building additional tracks, but for better security from fire from sparks thrown by the engine. It is presumed that if the track is in the middle of the right of way, and the latter is kept reasonably clear of combustible matter, such sparks as are necessarily emitted by the engines will fall inside the right of way, and do no harm;

and so railroad companies are properly charged with the duty of keeping the right of way clear, and are made liable for fires set outside the right of way; and, when fires are set outside the right of way, this fact raises a presumption of negligence on the part of the railway company. But this has no application where the plaintiff himself voluntarily places his property on railroad property, inside of this danger limit. In so doing, he takes his chances. We do not think a plaintiff in such case should have the benefit of such a presumption in his favor."

There is nothing in the particular statute of Michigan we are discussing which requires that a railroad shall have a right of way 100 feet in width, nor is there anything to show that the application of the statute was limited to any particular width of the right of way. Where a railroad company and the abutting property owner by agreement temporarily or permanently narrow the distance from the track to the edge of the right of way, as they did here, by a fence erected considerably within the right of way, it may be conceded that the risk of fire is increased. But the relation of the parties to the risk and danger is the same. It is an additional risk for each, but the loss must fall just where it would have fallen had a greater distance between the lumber and the track been maintained; for they voluntarily assumed the burden from the increased danger.

In Railroad Co. v. Richardson, 91 U. S. 454, the statute of Vermont provided that:

"When any injury is done to a building or other property by fire communicated by a locomotive engine of any railroad corporation the said corporation shall be responsible in damages for such injury unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury."

The property destroyed in that case was property of the abutting owner, built on the right of way by the owner for the convenience of the owner and railroad company. The railroad company contended that the statute did not apply to property located within the limits of the railroad. The supreme court said, speaking through Mr. Justice Strong:

"This view of the statute, as we have already remarked, is not, in our judgment, correct as a general proposition, and certainly not in its application to a case where property is placed within the lines of a railway, by the consent of a railway company, for the convenience, in part, of its traffic."

The lumber in this case was placed within the lines of the railway company's right of way originally for the convenience of the railway company; that is, for loading and unloading. Subsequently a side track was built from which the lumber was loaded and unloaded, but the piles were permitted to remain. The side track was often used by the railway company for switching cars and trains in its general business. The storing of the lumber and the use of the side track were the result of an arrangement profitable to both parties. The case before us cannot be distinguished from the Richardson Case.

The second assignment of error was based on the refusal by the court to give the following charge:

"Even if you find that the burning of the plaintiffs' lumber was caused by the negligence of the railroad, either in the condition or management of its engines, or in maintaining an unsafe condition of the right of way, the defendant will not be liable therefor, unless you also find that the burning of the lumber was the natural and immediate result of the fire communicated

from the railroad, without the intervention of any other cause or agency, such as might reasonably and naturally have been foreseen as the result of the fire on the inclosed right of way."

The third assignment of error was based on the refusal to give the following:

"Even if you find that the receiver was negligent in causing the setting fire to plaintiffs' lumber, in case you further find that plaintiff Charles Fox unreasonably refused to consent to the use of dynamite or to the tearing down of the lumber pile first discovered to be on fire, and that by such use of dynamite, or by tearing down the pile, or by both such means, the spread of the fire would have been prevented, plaintiffs can, in such case, recover no more, in any event, than the value of the lumber that would have been burned had such pile been torn down or destroyed by dynamite."

The charge upon the general subject which the court did give was as follows:

"Even if the receiver was negligent in permitting the setting fire to plaintiffs' lumber, plaintiffs cannot recover, provided due care on their part would have prevented the burning of their lumber, nor can the defendant be made responsible for the loss of any lumber, the burning of which would have been prevented by due care on the plaintiffs' part. This suggests the doctrine of contributory negligence,—that is, negligence on the part of the plaintiffs which has contributed or might have contributed to the injury,—about which I shall give you some further instructions later on. The question is not, 'Is the plaintiffs' contributory negligence or lack of care as great as the negligence of the receiver?' If negligence on the part of the plaintiffs, no matter how slight as compared with that alleged against the receiver, if negligence of this kind on the part of the plaintiffs directly contributed to the burning of the plaintiffs' lumber, the plaintiffs cannot recover. And to this I add, also, this contributory negligence must have been such, however, as that, if it had not occurred, the loss would not have happened."

It seems to us that this covers in a sufficient way all that the defendant was entitled to have charged to the jury upon the question whether the fire from the engine was the proximate cause of the burning of the lumber, or any part of it. There is not the slightest suggestion in the case of any intervening cause between the fire from the engine and the burning of the lumber pile, which could break the causal relation of one to the other, unless it was negligence on the part of the plaintiffs in not preventing or suppressing the fire, and that intervening cause this charge fully discusses.

The fourth assignment of error is based on the refusal of the court to give the following charge:

"It being undisputed that the plaintiffs were, at the time of the fire in question, maintaining on their side of the fence, and within the railroad right of way, material as combustible as that on the other side next to the railroad track, and the lumber first discovered on fire being within the limits of the right of way, plaintiffs cannot recover on account of any of the alleged negligence of the receiver in not keeping the right of way free from combustible material."

In lieu of this the court gave the following:

"If a fire started on that part of the right of way occupied by the plaintiffs, and caught there, and spread in combustible material carelessly allowed by the plaintiffs to accumulate there, and the fire would not otherwise have caught and spread, they cannot recover upon the negligence imputed to the receiver on account of the condition of the roadway not thus occupied by the plaintiffs; that is to say, in other words, if the jury should find that this fire caught in combustible material carelessly left and allowed to accumulate

by the plaintiffs on the property occupied by themselves for their lumber yard, although that was a part of the original right of way, then the plaintiffs in this case would not be entitled to recover, notwithstanding the fact that, intervening the place between where this fire originated and the railroad track, it might have been out of order in respect of the existence of combustible material, because, in the case supposed, the condition of affairs between the place where the fire caught and the railroad track would be entirely immaterial, and, in the case supposed, would not in any way have been involved in the communication of the fire from the engine to the lumber yard."

In a previous part of the charge the court had told the jury that it was—

"The duty of the plaintiffs to exercise reasonable care and **prudence** to keep that part of the right of way occupied by them free from inflammable and combustible material. That I have in substance already charged you. The duty of keeping that part of the right of way free from any combustible material by which fire might be communicated to the lumber was devolved upon the plaintiffs. If you find that plaintiffs neglected this duty, and that this neglect on their part directly contributed to the loss of their lumber, they cannot recover in this case, notwithstanding you find that defendant was also negligent."

It is claimed for the defendant that the evidence as to the condition of the four-foot space between the fence and the lumber pile where the fire first smoldered and caught in the lumber was such that contributory negligence contributing to the injury conclusively appeared, and that the court ought to have given the charge requested, which was in effect a peremptory instruction. Undoubtedly, the great weight of evidence does show that the part of the right of way on the northerly side of the fence, where the lumber piles were, had grass and other combustible material spread about in such a way as easily to communicate fire. There was evidence, however, by some witnesses, that the space between the fence and lumber pile was fairly clean. Moreover, in a short distance of four feet between the fence and the lumber pile, with a northerly wind blowing, it is easy to conceive that fire might have been communicated directly from the fence to the lumber pile without any aid from intervening grass or combustible material. If it did so, the presence of combustible material between the fence and the lumber pile did not contribute to the fire, and negligence of plaintiffs in this regard, however great, would not bar recovery. There was sufficient doubt as to how the fire did spread from the fence to the lumber pile to require the submission of the question to the jury.

We have covered all the assignments of error the plaintiffs have deemed it wise to press, and find no substantial error therein. We affirm the judgment of the court below.