### CARTER v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. January 8, 1903.)

#### No. 45.

1. RAILROADS—FIRES—EVIDENCE TO ESTABLISH NEGLIGENCE.

Stock owned by plaintiff was burned, while in an open car owned by defendant railroad company and standing in its freight yards, by fire which caught in the straw bedding of the car, and it was shown that a number of defendant's engines had passed on near-by tracks not long before the fire, some of which emitted sparks in large quantity, which fell near the car. There was also evidence which tended to show that the fire could not have been caused in any other way. *Held*, that such evidence was sufficient to make a prima facie case for plaintiff, and to require a submission of the question of defendant's negligence to the jury.

In Error to the Circuit Court of the United States for the Southern District of New York.

A. Delos Kneeland, for plaintiff in error.
Henry Galbraith Ward, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. This is an action to recover damages for the loss of fourteen mules and one horse, worth $2,315, which were destroyed by fire, while in the lawful possession and control of the defendant, at or near Mantua station on the defendant's railroad in the city of Philadelphia. The defendant is a common carrier of freight and passengers. The live stock in question was loaded on one of the defendant's open rack stock cars at Marlboro, Md., to be transported to Oldtown, Me. The car, with several others containing plaintiff's property, reached Philadelphia about 7 o'clock in the morning of May 24, 1899, and remained at the lower freight yard for about an hour and a half, when it was removed to the upper freight yard at Mantua. It remained there for over four hours, was shifted from place to place and, much of the time, was in close proximity to the main tracks of the defendant where locomotives were constantly passing. The fire occurred about 1 o'clock in the afternoon. At that time the car was between two others, also containing the plaintiff's property, and was "about five tracks" distant from the main tracks. The live stock was in charge of three of plaintiff's servants whose duty it was to feed and care for the animals. The fire originated in the straw bedding and hay on the bottom of the car. It was first discovered near the center and spread rapidly towards the ends of the car. It was proven that trains were continually passing on the main line and cars were being shunted about by shifting engines in the yard. These engines, presumably the engines of the defendant, were throwing out smoke and sparks. Several trains passed on the main line within three quarters of an hour prior to the fire. One of these threw out "great volumes of smoke and sparks" in the direction of the burned car. One of the plaintiff's men who, earlier in the day, was sitting on a car near the one that was destroyed, had his clothing burned from the cinders thrown out by a passing locomotive. The band was burned off his hat and holes were burned in his trousers. These sparks were bright and would carry a distance of 150 feet. They could be plainly seen while moving that distance and were bright all the time. There was also evidence tending to show that the fire could not have been started by the carelessness of the plaintiff's employés or by any other person. At the time of the fire the plaintiff's men were about three car lengths away, they had not been smoking pipes or cigars and saw no one else doing so.

The trial judge was of the opinion that the evidence failed to establish the relation of shipper and common carrier between the parties. In this view we concur. There was some testimony tending to show a written agreement, but the contract was not in evidence and the court was not at liberty to speculate as to its terms. Upon the other branch of the case the court, though not entirely clear as to the cor-

rectness of the ruling, was inclined to the opinion that negligence was not sufficiently established and that in order to find negligence on the part of the defendant the jury would have to indulge in conjecture and guesswork. Accordingly a verdict was directed for the defendant and the plaintiff excepted. We think the case made by the plaintiff was prima facie sufficient and that in the absence of all explanation the question of negligence should have been submitted to the jury.

Property valued at $2,315 belonging to the plaintiff was destroyed by fire while in a car of the defendant, on its premises and under its control. There was no vis major. Apparently the fire was the result of carelessness. Some one was to blame, and yet the circumstances were such that direct testimony was out of the question. No one saw the fire set. The only course open to the plaintiff, in these circumstances, was, first, to show that sparks from the defendant's engines might easily have lodged in the straw and hay of the open car and thus have caused the fire, and, second, by a process of exclusion, to make it apparent that no other cause for the fire existed. There was evidence that during the morning, and within a short time prior to the discovery of the fire, showers of live sparks from defendant's engines were falling in the immediate vicinity of the car in question; there was also evidence from which it might be fairly inferred that the fire could not have been caused in any other way. The proposition that such testimony is prima facie sufficient and calls for an explanation from the defendant is established by numerous well-considered cases in the state and federal courts. Ann Arbor R. Co. v. Fox, 34 C. C. A. 497, 92 Fed. 494; Gulf Ry. Co. v. Johnson, 4 C. C. A. 447, 54 Fed. 474; Missouri Pac. Ry. Co. v. Texas & P. Railway (C. C.) 41 Fed. 917; O'Neill v. N. Y. O. & W. R. Co., 115 N. Y. 579, 22 N. E. 217, 5 L. R. A. 591; Sheldon v. Hudson River R. Co., 14 N. Y. 221, 67 Am. Dec. 155; Peck v. N. Y. C. & H. R. Co., 165 N. Y. 350, 59 N. E. 206.

In the latter case the court of appeals of this state says:

"It was sufficient if the plaintiff proved facts and circumstances from which the jury might fairly infer that the engine was either defective in its condition, or negligently operated. The emission of sparks, unusual in quantity or character, or of an extraordinary size, such as would not be emitted from well-constructed locomotives in proper repair, would justify the jury in inferring negligence, and though not shifting the burden of proof, would cast on defendant the duty of explanation."

In the case of Flinn v. N. Y. C. & H. R. R. Co., 142 N. Y. 11, 36 N. E. 1046, quoted in the defendant's brief, the court says:

"If there had been evidence that any particular engine emitted an unusual quantity of sparks of an unusual size, that might, within the authorities cited, have furnished prima facie proof that the engine was out of repair, and the burden would have been cast upon the defendant to show that it was in proper condition and that the emission of sparks was inevitable, notwithstanding the use of any ordinary care."

The testimony was taken out of court and only portions of the depositions were read at the trial. We have, therefore, had an opportunity, which the trial judge did not have, to consider the entire testimony bearing upon the defendant's negligence. The result of this ex-

amination is to convince us that sufficient was shown to require the submission of the question of negligence to the jury.

The judgment is reversed, with costs, and a new trial is directed.